UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

WILLIAM H. OLIVER PLAINTIFF/COUNTER-DEFENDANT

VS. CIVIL ACTION NO.: 4:09-cv-29-CWR-LRA

BILL SKINNER DEFENDANT/COUNTER-PLAINTIFF

ORDER

This Court held a bench trial in this case on October 27, 2011. The Plaintiff/Counter-Defendant and counsel for Defendant/Counter-Plaintiff announced ready, proceeded to trial, presented evidence, and finally rested. Having considered the evidence and applicable law, the Court now issues its Findings of Fact and Conclusions of Law.

Also before the Court are three post-trial motions. They too will be resolved below.

## I. Factual and Procedural History

William Oliver, a citizen of Ohio, filed a *pro se* Complaint in this Court on March 5, 2009, naming as Defendants BankFirst and Bill Skinner. [Docket No. 1]. At the heart of this case is Oliver's disappointment resulting from the loss, through a foreclosure sale, of some 138 acres of land he owned in Noxubee County, Mississippi. *See* [Docket No. 13]. The land was subject to a deed of trust to Merchant Farmers Bank, predecessor in interest and title to BankFirst Financial Services. *Id.* On February 1, 2008, Circle L Properties ("Circle L") purchased the property at a public foreclosure auction. *Id.* The sale was judicially confirmed by decree of the Chancery Court of Noxubee County. [Docket No. 13-3]. *See also* Ex. D-2. Oliver did not appeal this decision.

After the foreclosure sale, Oliver refused repeated requests to remove his livestock and farming equipment from the property. *See* Ex. D-1, at 00028-29. As a result, Circle L filed suit

in the Circuit Court of Noxubee County. The court concluded that despite having been "notified both in writing and verbally that he should remove all livestock and farming equipment . . . [Oliver] failed or refused to remove his property." *Circle L Properties, LLC v. Oliver*, Cause No. 2008-151, slip op. at 2 (Noxubee Cir. Ct. Dec. 15, 2008). The court rejected Oliver's request to stay the matter because, although Oliver had filed a petition for bankruptcy in the United States Bankruptcy Court of the Northern District of Ohio, the petition was initiated after Circle L secured title to the property. *Id.* The court gave Oliver 15 days to remove his livestock and farming equipment or they would be declared abandoned, at which time Circle L could "take all steps necessary to have the livestock transported to the Macon Stockyard for sale to the highest bidder." *Id*. Specifically, after Circle L recouped its expenses, any remaining balance would be placed in the registry of the Circuit Clerk of Noxubee County and made available for return to Oliver. *Id*. *See* Miss. Code Ann. § 69-13-1, *et seq*. Oliver did not appeal this decision.

Subsequently, Oliver removed the equipment, but did not remove the livestock. Circle L then sold the cattle to the Macon Stockyard, recouped its expenses, and caused the remaining balance from the sale to be deposited in the registry of the Circuit Clerk. (T.68-70). At the time of the trial before the undersigned, the funds remained in the circuit court registry. *Id*. at 70.

On January 26, 2009, Oliver filed a criminal complaint against Skinner with the Noxubee County Sheriff's Department. *Id.* at 29-30. *See also* D-1, at 00055. In it, he complained that Skinner had stolen his cows and taken them to the stockyard. (T.30). The record is not clear if this matter was eventually heard by the Noxubee Justice Court, which has jurisdiction over misdemeanors, *see* Miss. Code Ann. § 99-33-1(2) (providing concurrent jurisdiction with the circuit court over misdemeanor criminal charges) or the Circuit Court, *see id.* § 9-7-81 (providing general jurisdiction "to hear and determine all prosecutions in the name of the state

for treason, felonies, crimes, and misdemeanors[.]"). The proceeding, however, appears to have ended with a ruling favorable to Skinner. (T.33).

Dissatisfied with the actions of the state courts, Oliver filed this suit against BankFirst and Bill Skinner, who was Circle L's agent and assistant manager, and who had appeared at the auction on behalf of Circle L. [Docket No. 1]; T.53-56. The case was originally assigned to the Honorable Tom S. Lee.

After being served, BankFirst filed a motion to dismiss and alternatively a motion for more definite statement. [Docket No. 8]. Skinner filed a motion to dismiss, *see* [Docket No. 12], but he also filed an answer and asserted counter-claims against Oliver. In their motions, the defendants advanced several grounds for dismissal, including lack of subject matter jurisdiction pursuant to the Rooker-Feldman Doctrine.[1]

Skinner's counter-claims alleged that Oliver's Complaint was frivolous and constituted fraud and harassment. [Docket No. 10]. Additionally, he asserted that the lawsuit violated the Litigation Accountability Act (hereinafter "LAA"), *see* Miss. Code Ann. § 11-55-5. He also asserted that Oliver was liable for defamation, abuse of process, and malicious prosecution, and that Skinner should be awarded sanctions.

Oliver never responded to the Defendants' dispositive motions. Judge Lee entered judgment dismissing the claims against BankFirst and Bill Skinner without prejudice. [Docket Nos. 14 and 15].

Oliver appealed to the United States Court of Appeals for the Fifth Circuit, which dismissed the appeal, concluding that it lacked jurisdiction because "Bill Skinner's counter-claim

---

[1] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

against Oliver remains pending in district court." [Docket No. 29]. When the case was returned to this Court, it was reassigned to the undersigned. [Docket No. 33].

Skinner filed an Amended Counter-claim on February 11, 2011. In it, he contended that Oliver's appeal to the Fifth Circuit provided an additional basis for relief under the LAA, and that he had incurred additional fees and expenses defending against Oliver's frivolous claims in the trial and appellate courts. [Docket No. 36].

The parties engaged in discovery on the Amended Counter-claim. Subsequently, Skinner filed a motion for summary judgment, on which this Court deferred ruling and set the matter for trial. *See* Text-Only Order of August 25, 2011. In conferences leading up to the trial and including the pre-trial conference, however, Oliver continued to assert claims and advance issues which were disposed of through Judge Lee's order. As a result, the Court "remind[ed] the *pro se* Plaintiff again that the only claims that will be tried are those counterclaims which have been brought by the Defendant/Counter-Claimant [Skinner] against the *pro se* Plaintiff." *Id*.

On October 27, 2011, a bench trial was held on Skinner's counter-claims.

## II. The Trial

The issues presented to the Court concerned whether Oliver was liable to Skinner for abuse of process, defamation, malicious prosecution, violation of the Litigation Accountability Act, and sanctions under Rule 11 of the Federal Rules of Civil Procedure. *See* Pre-Trial Order, Docket No. 57, at 1-2; *see also* Opening Statement of Counsel for Skinner, T.21. During the trial, Skinner called three witnesses to support his claims: Deputy John Clanton, Bill Skinner, and Lucien Gwinn, III. Oliver testified in his defense. He was his only witness.

### A. Skinner's Case-In-Chief

Deputy Clanton had investigated Oliver's criminal complaint accusing Skinner of stealing his cows and taking them to the Macon Stockyard.[2] *See* Ex. D-2, at 00055; T.28. Clanton testified that during his investigation, Oliver told him that "Bill [Skinner] had stole his cows, them was his cows." (T.32). When presented with the criminal complaint, the Judge hearing the matter "made a decision on it." *Id.* at 33.[3]

Skinner testified that Oliver accused him of stealing cows from his property even though Skinner acted within the realm of the previous state court order empowering him to sell Oliver's cows and place in the circuit clerk's registry the proceeds less his expenses incurred. *Id*. at 53, 60, 65, 95. He pointed to the judicial foreclosure proceedings as evidence that Circle L had not stolen any of Oliver's property. *Id.* at 57. Skinner also explained that he had to hire counsel to defend against the claims in the instant Complaint. *Id.* at 59. Furthermore, in explaining the toll Oliver's criminal and civil complaints had on him, he said:

> Well, puts you kind of under stress and puts you – you know, hurts your credibility. And it just – you know, folks find out about it, they just – might think you're stealing stuff. But that wasn't the case of this.
>
> * * *
>
> Well it's really not good for that word to get out on anybody. . . . It has cost me a lot of time and a lot of just discomfort. I mean a lot of discomfort. And just like today I need to be home working, trying to get my crop out. Instead, I'm down here in federal court trying to solve this matter. And I just want to get it behind me. Causes a lot of stress and strain on me.[4]

*Id.* at 57, 58, 71. Skinner added that Macon is not a large town – "everybody knows everybody," he said – and that one would not want members of the community to hear such accusations. *Id.*

---

[2] Deputy Clanton also was the officer who received Oliver's Complaint. *See* Ex. D-2, at 00055.

[3] When asked specifically if the matter was terminated in favor of Skinner, Deputy Clanton simply responded that the "[j]udge made a decision on it." (T.33). Presumably, the judge ruled in favor of Skinner.

[4] Skinner added, "I just don't like to have any kind of lawsuit, you know, hanging over me." (T.71). This testimony is either mistaken or reflects a lack of understanding of the purpose of our trial. No lawsuit had been "hanging over" Skinner since August 20, 2009, more than two years before our trial. [Docket No. 15]. Our trial, of course, was solely on Skinner's counter-claims against Oliver. It was his choice to spend his time in federal court pursuing his counter-claims instead of working his crop.

at 58. He testified that his wife, children, banker, and lawyer knew about Oliver's assertions.[5] *Id.*

To conclude his testimony, Skinner spoke about the fees his attorneys had charged to represent him in this case since March 5, 2009. *Id.* at 59-60. He claimed that the fees totaling approximately $32,000 were reasonable and necessary.[6] *Id.* Skinner said he had not incurred any legal fees prior to the filing of the instant civil action. *Id.* at 61.

The third and final witness called to testify in Skinner's case-in-chief was Lucien "Sam" Gwin, III, one of Skinner's attorneys. Gwin explained that his firm was charging Skinner $250 per hour to represent him in the instant case and that the amount was reasonable and necessary. *Id*. at 101-02. He also provided testimony regarding the work the firm had done on Skinner's behalf in this court and on appeal. *Id.* at 103-04. The charges Gwin testified to resulted from this case only, without regard to his representation of Circle L. *Id.* at 111.

Skinner rested, *id.* at 112, and then Oliver "testified."[7]

### B. Findings as to Oliver

---

[5] Neither his wife, children, nor his banker testified at the trial. In fact, no one from the community testified that they heard Oliver's allegations. Skinner's further assertion that Oliver's charges "kind of hurts your credit" was unsupported by any evidence. (T.58).

[6] As will become clear, Skinner did not prove any claims that would entitle him to attorney's fees. It therefore is not necessary for the Court to consider his request for attorney's fees.

Even if he had, the evidence supporting the request is deficient. First, the testimony did not distinguish the hours spent defending against Oliver's claims (for which fees would be more easily justified) versus those spent advancing Skinner's counter-claims (which, on this record, are not justified). In the Court's view, the early dismissal of Oliver's claims means the time spent prosecuting Skinner's counter-claims would likely predominate. (In that vein, recall that $0 of the fee amount testified to at our trial concerned Skinner's defense prior to that in the instant civil action.) Second, the affidavit in support of fees that was described at trial, *see* T.111, did not make it into the Court's exhibits. Exhibit D-3 is an affidavit by attorney Timothy Gowan regarding the sale of the property, not the affidavit of Gwin regarding fees described in the transcript. It is not clear what happened, but counsel may have submitted the wrong document to the courtroom deputy. As a result, it is impossible to determine whether the evidence accords with the *Johnson* factors. *See Worldcom, Inc. v. Automated Communications, Inc.*, 75 F. Supp. 2d 526, 530 (S.D. Miss. 1999) (applying *Johnson* factors to case proceeding in diversity). Third, the Court would likely not grant a motion for attorney's fees based solely upon the testimony of the billing attorney and his client; corroborative evidence from other attorneys would be helpful to find an appropriate billing rate. *See Alexander v. City of Jackson, Miss.*, No. 3:04-cv-614, 2011 WL 1059293, at *6 (S.D. Miss. March 21, 2011) ("The requested market rate may be supported by affidavits of attorneys who practice in the locality in question.").

[7] Because Oliver was acting as his own attorney, the Court allowed him to take the witness stand and offer his testimony in a narrative form. Counsel for Skinner cross-examined him.

Oliver has some experience with the legal system. He has served as his own representative in a number of lawsuits, including in the bankruptcy court in Ohio and in the state and federal courts here in Mississippi. *Id.* at 124-37. He has filed appeals in the United States Courts of Appeals for the Fifth and Sixth Circuits and sought review by the United States Supreme Court. *Id.*

Despite his contacts with the courts, Oliver does not have a complete grasp of the law and how it intersects with and applies to the facts of his case. It is clear to this Court that Oliver believes that an automatic stay was in place because of his bankruptcy case. "[W]hoever started it," he said, "BankFirst and all, they didn't have a right to do it because of the automatic stay." *Id.* at 154. In response to a question from the Court asking if Oliver thought that a violation of the automatic stay had occurred, thereby authorizing this suit against Skinner and BankFirst, he said, "[d]efinitely, because of the automatic stay. And when they went -- taken that action, they didn't have a right to do it." *Id.* at 155; *see also id.* at 129 (BankFirst "started this whole action"). The following colloquy between defense counsel and Oliver sheds more light on his views:

Q. Do you feel like the chancery court was wrong in ordering the sale of your land?
A. Yes I do.
Q. Do you feel like the circuit court was wrong in ordering the sale of what were your cows?
A. Yes, I do.
Q. You told them that, didn't you?
A. Oh, I told them. Right. I send them a copy of the -- the automatic stay.
Q. Yeah. Let me ask you something. What bankruptcy court ordered or directed an automatic stay that applied to the sale of the land or you removing your cows off of that land? Which cause of action applied to that? I want to ask you that.
A. When I first -- you're familiar with chapter 13. Right?
Q. Mr. Oliver, you always go back and ask me if I'm familiar with chapter 13. I'm asking you a question, and that question is which one of those

> bankruptcy causes of action applied to any action that resulted in you losing your land or you losing your cows[?]
>
> A. All of them.

*Id.* at 140-41. In Oliver's mind, Skinner had no right to sue him. Instead, he said, Skinner "should be suing BankFirst . . . for selling him some stolen land." *Id.* at 118.

Although the evidence clearly establishes that Skinner only acted in his capacity of agent and officer of Circle L, Oliver explained:

> I didn't know nothing about no Circle L. Only thing I knew it was Mr. Skinner was totally involved. That's the reason I couldn't put it on somebody else. . . . Like I say, I didn't know nothing about no Circle L, but only thing I know that – that was dealing with it was Mr. Skinner. I didn't want [to] try to make a statement on somebody that I didn't know nothing about.

*Id.* at 132. In other words, Oliver named Skinner as a defendant because he was the person acting on behalf of Circle L.

## III. The Claims

Oliver invoked this Court's diversity jurisdiction pursuant to Title 28, Section 1332 of the United States Code. As a result, the applicable substantive law is that of the forum state, Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc*., 193 F.3d 340, 342 (5th Cir. 1999).

### A. Malicious Prosecution

In *Miles v. Paul Moak of Ridgeland, Inc.*, No. 2011-CA-407-COA, 2012 WL 4075169 (Miss. Ct. App. Sept. 18, 2012), the Mississippi Court of Appeals recited that a malicious prosecution claim requires the plaintiff to prove six elements:

> (1) the institution of a proceeding; (2) by, or at the insistence of the defendant; (3) the termination of such proceeding in the plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; and (6) the suffering of the injury or damage as a result of the prosecution.

*Id.* at *2 (citation omitted). "Failure to prove any element by a preponderance of the evidence is fatal to the plaintiff's claim." *Id.* (citation omitted).

"Malice refers to the defendant's objective in bringing the criminal proceeding." *Id*. at *4 (citation omitted). "[T]he term 'malice' in the law of malicious prosecution is used in an artificial and legal sense and applied to prosecution instituted primarily for some purpose other than that of bringing an offender to justice." *Trilogy Communications, Inc. v. Times Fiber Communications, Inc.*, 47 F. Supp. 2d 774, 780 (S.D. Miss. 1998) (citations omitted). It therefore "does not refer to mean or evil intent as a layman might ordinarily think." *Id.*; *see Alradai v. Riverhills Bank*, No. 5:06-cv-66, 2007 WL 2001647, at *3 (S. D. Miss. July 5, 2007); *Brabham v. O'Reilly Auto., Inc.*, 438 F. Supp. 2d 680, 682 (N.D. Miss. 2006); *Nassar v. Concordia Rod and Gun Club, Inc.*, 682 So. 2d 1035, 1042 (Miss. 1996); *George v. W.W.D. Automobiles, Inc.*, 937 So. 2d 958, 962 (Miss. Ct. App. 2006). In short, malice is a term of art that "refers to the defendant's objective, not his attitude." *Strong v. Nicholson*, 580 So. 2d 1288, 1293 (Miss. 1991).

"The [Mississippi] supreme court has pronounced that malicious prosecution actions must be 'managed with great caution.'" *Funderburk v. Johnson*, 935 So. 2d 1084, 1097 (Miss. Ct. App. 2006) (citation omitted). That is because "the threat of a malicious prosecution suit may deter citizens from attempting to bring wrongdoers to justice, necessitating a cautious approach to these suits." *Id.*

Here, Skinner has failed to prove by a preponderance of the evidence that Oliver acted with malice in filing the criminal complaint with the Noxubee County Sheriff's Department, or that Skinner has suffered damages as a result of that filing. While Oliver's real and personal property was sold in accordance with the law, Oliver, though misguided, was sincere in his belief

that the courts were wrong in ordering the sale of his land and his cattle, and that Skinner had no authority to carry out or comply with the circuit court order. (T.138-40). Oliver named Skinner only because Skinner was the face of Circle L, and took care not to file his complaint against "somebody that [he] didn't know nothing about." *Id*. at 133. Oliver was incorrect, but his actions do not show that he acted with malice. *See Funderburk*, 935 So. 2d at 1097-98 (affirming directed verdict for insufficient evidence of malice); *Hudson v. Palmer*, 977 So. 2d 369, 381-82 (Miss. Ct. App. 2007) (affirming summary judgment on malicious prosecution claim where undisputed evidence showed that incident report was filed without malice and solely to stop plaintiff's harassment).[8] Nor was there sufficient evidence of any damages suffered by Skinner that were caused by Oliver's criminal complaint.

As a result, Skinner's malicious prosecution claim fails.

**B. Abuse of Process**

An abuse of process claim requires the plaintiff to "prove the following elements by a preponderance of the evidence: (1) the defendant made an illegal use of process, (2) the defendant had an ulterior motive for exercising such illegal use of process, and (3) damage resulted from the perverted use of process." *Miles*, 2012 WL 4075169, at *4 (citation omitted).

> An action for abuse of process differs from an action for malicious prosecution in that the latter is concerned with maliciously causing process to issue, while the former is concerned with the improper use of process after it has been issued. The crucial element of abuse of process is the intent to abuse the privileges of the legal system.

*Id.* (quotation marks, citations, and brackets omitted) (affirming summary judgment where the plaintiff "fail[ed] to show any perversion or unauthorized use of any legal process"). The cause

[8] To the extent Skinner's claim of malicious prosecution is rooted in Oliver's filing of the instant civil action, such a claim would fail for the same reasons. "In a civil suit, a plaintiff is always seeking his own ends. For this reason, more latitude is generally permitted respecting motivation in the bringing of civil suits for purposes of the malice issue in malicious prosecution cases." *Trilogy*, 47 F. Supp. 2d at 781 (quotation marks and citations omitted). Skinner has not proven that Oliver acted with malice in bringing this lawsuit.

of action has also been described as "the malicious perversion of a regularly issued civil or criminal process, for a purpose and to obtain a result not lawfully warranted or properly attainable thereby." *Cent. Healthcare Servs., P.A. v. Citizens Bank of Philadelphia*, 12 So. 3d 1159, 1167 (Miss. Ct. App. 2009) (citation omitted).

Skinner's abuse of process claim cannot succeed on the evidence presented. First, as explained above, Skinner has not proven that Oliver intended to abuse the privileges of the legal system or displayed malicious perversion of the legal system to achieve an improper purpose. Although Oliver is wrong about whether the bankruptcies he filed prevented other court actions from proceeding, he honestly held that view and has argued it here in seeking the return of his property. Skinner's subjective belief that Oliver had an ulterior motive does not make it so. *See id*. In addition, Skinner failed to prove by a preponderance of the evidence that he suffered damages which resulted from a perverted use of process.

Abuse of process has not been established.

**C. Defamation**

Skinner alleges that because Oliver accused him of theft and since that charge was "baseless and without any merit," *see* Answer, Affirmative Defenses and Counter-Claim of Bill Skinner [Docket No. 10], Oliver is liable to him for defamation. At trial, the sole witness to testify about what Oliver said was Deputy Clanton, who had approached Oliver to discuss his criminal complaint. During the course of that investigation, Oliver told Deputy Clanton that "Bill had stole his cows, them was his cows." (T.32).

To establish a defamation claim, the plaintiff must prove four elements by a preponderance of the evidence: "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the

part of the publisher, and (4) either actionability irrespective of special harm or existence of special harm caused by the publication." *Richard v. Supervalu, Inc.*, 974 So. 2d 944, 949 (Miss. Ct. App. 2008) (citing *Armistead v. Minor*, 815 So. 2d 1189, 1193 (Miss. 2002)).

"A communication may be privileged if it is made in good faith in the prosecution of any inquiry regarding a crime which has been committed, and for the purpose of detecting and bringing to punishment the criminal." *Id.* at 950 (quotation marks, citation, and brackets omitted). Put differently,

> [a] communication made in good faith and on a subject matter in which the person making it has an interest, or in reference to which he has a duty, is privileged if made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be slanderous, provided the statement is made without malice and in good faith.

*McGinty v. Acuity Specialty Prods. Group, Inc.*, No. 3:07-cv-715, 2009 WL 161827, at *3 (S.D. Miss. Jan. 22, 2009) (quoting *Smith v. White*, 799 So. 2d 83, 86 (Miss. 2001)).

Succinctly stated, "a qualified privilege shields statements made to law enforcement officers concerning a suspected crime." *Howell v. Operations Mgt. Intern., Inc.*, 77 F. App'x 248, at *2 (5th Cir. 2003) (citing *Downtown Grill, Inc. v. Connell*, 721 So. 2d 1113, 1119-21 (Miss. 1998)). "Statements within the scope of [this] qualified privilege[] cannot give rise to defamation liability unless the speaker acts with malice, and the plaintiff has the burden of overcoming a presumption that the statements were made in good faith." *Id*. (citations omitted).

As the law enforcement officer charged with investigating Oliver's criminal complaint, Deputy Clanton certainly had a duty to inquire of and obtain information from Oliver regarding the scope of that criminal complaint. Similarly, as the complainant who believed that his

property had been stolen, Oliver had a duty to respond to questions asked of him by law enforcement officers.[9]

Accordingly, the focus shifts to whether Skinner has overcome the presumption that Oliver's statement to law enforcement was made in good faith. He has not. And as before, the Court finds that Skinner has not proven that Oliver acted with malice in telling Deputy Clanton what he believed to be true.[10]

For these reasons, defamation has not been established.

**D. Litigation Accountability Act**

Skinner brought a separate cause of action against Oliver for what he contends were violations of the Litigation Accountability Act, Miss. Code Ann. § 11-55-5. But the Mississippi Supreme Court has held that the Litigation Accountability Act does not provide a separate cause of action. *Rose v. Tullos*, 994 So. 2d 734, 738 (Miss. 2008). Accordingly, this claim is unavailing.

**E. Sanctions**

In his closing argument, counsel for Skinner requested damages and/or sanctions against Oliver in the amount of $25,000 plus reasonable attorney's fees. (T.162). Counsel's main argument was that Oliver had wrongfully and unnecessarily prolonged this litigation against Skinner. *Id.* at 161-62. Skinner, for example, "had to hire lawyers. He had to take off of work.

---

[9] There was no conclusive testimony at trial about how or in which court the criminal complaint was presented, nor about how the case was resolved. All we know is that the "judge made a decision on it." (T.33). It is not clear whether the court held a trial or if the prosecutor moved to have the criminal complaint dismissed. There certainly was no testimony that Oliver took additional steps after filing the criminal complaint to make sure that the case was prosecuted. *See, e.g.*, *Benjamin v. Hooper Electronic Supply Co., Inc.*, 568 So. 2d 1182, 1186-92 (Miss. 1990) (describing, in "a senseless prosecution initiated by Cash in a reckless manner," the various actions taken by complainant to make sure that police carried forward its investigation).

[10] To the extent Skinner is complaining about testimony or matters presented at a previous trial – for example, statements made during Skinner's action seeking removal of cows from Circle L's newly-acquired property, which may have been overheard by Deputy Clanton, the bailiff at that trial – the claim fails because statements made during judicial proceedings are absolutely privileged. *Central Healthcare*, 12 So. 3d at 1168; *Prewitt v. Phillips*, 25 So. 3d 397, 399 (Miss. Ct. App. 2009).

He's got a crop to put in the ground today. He's got issues of time that he has taken away from him being able to take care of himself and take care of his family. He's been damaged." *Id.* at 162.

The argument is not borne out by the evidence. Skinner presented no evidence at trial that Oliver's complaint to the Sheriff's Department resulted in any actual costs or injury to Skinner, and Oliver's claims in this court were dismissed almost immediately. *See* [Docket No. 15]. The vast majority of the time and money expended in this civil action – that is, the injuries allegedly caused by this suit being prolonged – have stemmed from Skinner's counter-claims against Oliver. Skinner is not entitled to take a case to trial, lose on his claims, and then seek sanctions from his opponent on the theory that his opponent unnecessarily prolonged the litigation. The request for sanctions in that amount and on those grounds is not well-taken and will be denied.

## IV. Post-Trial Motions

Unfortunately, that is not the end of the story. Before the Court are three post-trial motions: Skinner's motion for sanctions [Docket No. 64], Oliver's motion for an order on the bench trial [Docket No. 65], and Skinner's motion for a permanent injunction and restraining order [Docket No. 68]. Each will be taken in turn.

Perhaps of greater importance, though, is the issue of how Oliver and Skinner expect to move forward with their various grievances against each other after today. The Court will take that up last.

### A. Sanctions

After trial, Oliver moved the Court to reinstate his claims against defendants BankFirst and Skinner so that he could pursue his theory of wrongful foreclosure. [Docket No. 62].

Skinner responded in opposition [Docket No. 63] and simultaneously moved for sanctions, arguing that Oliver's contentions were frivolous and filed for purposes of harassment and delay [Docket No. 64].

The Court agrees. Toward the end of the trial, the undersigned repeatedly explained to Oliver that his claims were dismissed and would not be reinstated unless the Fifth Circuit ordered them reinstated:

> The remaining issues that were present are those claims brought by Mr. Skinner. Once those remaining issues have all been decided, if either party is not satisfied of the ruling of the court, I would imagine the Fifth Circuit will then take up any appeal.
>
> But as it stands now on October the 27th, 2011, you have no claim against Mr. Skinner or BankFirst in this. And the court is not going to entertain any claims, because I have no authority to entertain the claims that you think that you have, the hurt that they may have caused you or you believe they have caused you, the damages that you believe you may have suffered. This court does not have the authority to hear those claims.
>
> The only authority that I have is to hear the claims that have brought -- been brought by Mr. Skinner. You have refused to hear that. You have refused to understand that. And it's very tragic that you have.

(T.167). Oliver's motion to reinstate frivolously and willfully disregarded the Court's repeated admonitions. Skinner was forced to incur needless expense in opposing the motion for reinstatement, and the Court's time was wasted in ruling on an issue it and its colleague have collectively ruled upon multiple times.

Skinner's motion for Rule 11 sanctions will be granted. Oliver will be sanctioned $250, payable to Skinner's law firm (Gwin, Lewis & Punches), for presenting a frivolous motion for reinstatement which disregarded prior Court rulings and needlessly increased the cost of this litigation.

**B. Resolving the Bench Trial**

This Order has resolved all claims heard at our bench trial. Accordingly, Oliver's motion seeking an order on the bench trial is denied as moot.

**C. Injunctive Relief and Restraining Order**

Skinner's most recent motion alleges that after the close of our trial, Oliver continued to seek Skinner's arrest and also continued to defame Skinner. [Docket No. 68]. The sole piece of evidence supporting Skinner's motion is a July 13, 2012, letter purportedly from Oliver to the Macon Beacon, a newspaper in Noxubee County, Mississippi, in which Oliver wrote, "BILL SKINER STOLE WILLIAM OLVERS COWS AND BULLDOZER AND CLEARING BLADES." [Docket No. 68-2]. Oliver did not respond to the motion.

> To obtain permanent injunctive relief, a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. A permanent injunction is generally only granted where, as here, a full trial on the merits has occurred.

*ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008) (quotation marks and citation omitted). Each factor will be discussed in turn.

First, the Court is not persuaded that Skinner has made a sufficient showing of irreparable injury, either to his reputation or at all. The law requires that "[a] plaintiff must allege 'specific facts' to support a finding of irreparable injury." *Id.* (citation omitted). The only specific fact supporting injury here is Oliver's letter to the newspaper. And there is no evidence that a reasonable person reading it would believe that a letter typed in all-caps and full of misspellings – indeed, a letter where the author has misspelled both his own name and the name of the person he is writing about – is credible, such that it has actually damaged Skinner. For purposes of injunctive relief, Oliver's letter alone, without more, does not suffice to show irreparable injury.

Second, Skinner has an adequate remedy at law for defamation: monetary damages. His failure to prove up his defamation and other claims in our bench trial says nothing about what he may prove at a later trial on Oliver's letter to the newspaper.

Third, the balance of hardships does not tip in Skinner's favor.

Fourth, the public interest is better served by a cautious approach to injunctive relief in defamation cases. That is because "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights," *Tory v. Cochran*, 544 U.S. 734, 738 (2005) (quotation marks, citations, and brackets omitted).

Last, but not least, while Skinner's request for a permanent injunction has appropriately come after a trial on the merits, issuance of such an injunction is usually predicated upon the movant succeeding on his claims at trial. That has not happened here.

The motion for permanent injunctive relief is denied.

**D. Moving Forward**

Since a final judgment will issue today, the parties will be entitled to appeal to the Fifth Circuit. Oliver's $250 sanction is stayed pending appeal. That is, it does not have to be paid unless the sanction is affirmed on appeal. If neither party appeals, the sanction shall be paid by June 1, 2013.

Oliver and Skinner are urged to consider whether continued litigation is the most productive and cost-effective means of resolving their dispute. Each party has lengthened these proceedings in different ways. But no one has achieved the result he wanted. The benefits from continuing to litigate are uncertain, but the costs are clear: more time in court and more money spent either on attorneys, or perhaps on sanctions.

Oliver especially should proceed with caution. This Order plainly puts him on notice that he no longer has a claim against BankFirst or Skinner regarding the loss of his land and cattle, as difficult as those events may have been. Further attempts to pursue BankFirst or Skinner for those losses, except via this one appeal to the Fifth Circuit, may lead Skinner to sue him again for defamation (or for any other cause of action), leading to a possible judgment against him, and could lead to additional sanctions from the Court for frivolous filings.[11]

## V. Conclusion

After considering the evidence presented at trial, the parties' arguments, and the applicable law, Skinner's causes of action against Oliver, based on events that occurred before trial, are hereby dismissed with prejudice. Skinner's motion for sanctions is granted and Oliver is sanctioned $250 for frivolous filing in violation of Rule 11. Oliver's motion for a ruling is moot and Skinner's motion for injunctive relief is denied. A separate final judgment shall issue this day.

**SO ORDERED**, this the 22nd day of February, 2013.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

[11] The Court will emphasize that it is not attempting to prevent either party from appealing. Once the appeal has concluded, however, that should be the end of the matter.